Good morning, Your Honors. May it please the courts, Brad Kaiserman on behalf of Mr. IAIL. The Court of Appeal made three unreasonable determinations under AEDPA. It unreasonably determined that the request was made on the day of trial, as opposed to when the FRERTA request was filed with the Court. It unreasonably determined that the request was made for purposes of delay, even though IALA had objected multiple times to continuances and on the day of trial elected against receiving new counsel, which would have resulted in a six-month delay. And third, the Court of Appeal unreasonably determined that IALA's prior conduct could have been a reason to deny the FRERTA request, which is contrary to Illinois v. Allen, which requires that a warning be given after self-representation has begun. It's our position that the timeliness issue by itself even forecloses the need to consider the other two issues. That because Mr. IALA made a timely request three weeks before trial began, which is consistent with FRERTA, that that was all that needed to be determined and that the trial court's denial, therefore, of his request on the day of trial was error. FRERTA makes clear that a request made weeks before trial is timely. And under Houston v. Lack 487 U.S. 266, a filing is complete when delivered to and received by the clerk or court official. The record is clear here. The minute order shows that Mr. IALA's request was received into the court file on January 29th, three weeks before the trial court held a hearing on the request, which was the day of trial. Houston v. Lack also stands for the prison mailbox rule, which provides that when an inmate delivers a document to a prison guard or official, that that constitutes the filing date. Here, Mr. IALA delivered his request to the bailiff, who then turned it into the court. So even if the bailiff had not provided it to the court under Houston v. Lack U.S. Supreme Court authority, that request would still have filed three weeks before the hearing on the FRERTA request. But not only did the bailiff receive it, but the bailiff did submit it to the court, the clerk received it, so the court was in full receipt of the FRERTA request three weeks before trial. Regarding the unreasonable determination of intent to delay, again, I will note that IALA repeatedly objected to the continuances, refused to waive time at multiple hearings prior to the date of the trial, indicating that he wanted to move to trial immediately. When offered a six-month delay in addition to receiving new counsel, he declined that request because he was so intent on proceeding to trial. And even trial counsel noted IALA's frustrations with the delays in proceeding to the second trial, and that's on 2 ER 158 to 159. And then lastly, there was an unreasonable determination of obstructionist conduct. FRERTA cites that, quote, the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct. It does not provide for a court to deny self-representation at the outset before any warnings had been given or anything of that nature. Here, Mr. IALA was not self-representing, and while there were some prior conduct, most of which occurred actually outside of the courtroom, which we also argue is irrelevant, there had no compliance with Illinois v. Allen that there was a warning and then a subsequent violation. Unless the court has any further questions, I will reserve. All right. Thank you. Thank you. Good morning, Your Honors. And may it please the Court, Deputy Attorney General Jonathan Krauss on behalf of Respondent. I think it is worth noting here that before Petitioner brought this claim or brought this case to federal court, there was no dispute about one fundamental truth about this case, and that is that Petitioner's FRERTA request was untimely because he did not present that request to the trial judge until the day of trial, as FRERTA makes clear is required. Was there a change in judges between, assigned judges between January and February, January 29 and February 19? Yes, there was a new judge on the first day of trial, which was on the 19th. So is the role that you have to present it to the same, the judge who's going to hear the trial? I mean, how could he have known who to present it to? You know, January 29 was scheduled as a trial date, right? So it's the argument that it was scheduled as a trial date and that's when he made it, so therefore that's on the eve of trial or that it depends on, you know, when a new judge is assigned to do the trial, then you take that date when that judge gets it. Well, Your Honor, it ultimately doesn't really matter in this case which judge, the fact that there was a new judge on the 19th, that's true. The important point for, under FRERTA purposes, because that is the controlling law in this area, is that there was no request made to any trial judge until February 19th. But he filed it on January 29 or he handed it to the bailiff. And that's an important distinction. He did not present this, and again, FRERTA makes very clear, FRERTA doesn't say a lot about the time in this requirement. What it does say is clear. The request must be made to the trial judge and this is not simply a formulistic thing about... We know if there's a change in trial judge. I mean, he was making it to the judge that was supposed to do the trial. But I think the important point, Your Honor, is he didn't actually make that request. You're right, Your Honor. Had he made that request, let's say, orally, like happened in the Tamplin case that he relies upon, to that judge on January 29th, then we wouldn't be talking about this. Can we infer that the Court received the request on January 29th given that his request was noted in the minute entry dated January 29th? No, Your Honor. We can't infer that. And we certainly know that what he did here was that he filled out the waiver form, again, as the record says. It doesn't say a lot about it. It does say that he filled it out off the record, outside of the presence of the Court and the attorneys, handed to the bailiff. And yes, apparently, it was put into the file on that day. That was not a filing as far as California law is concerned. But as the district court pointed out, that determination of whether it was filed or the mailbox rule discussion that counsel is bringing up is really irrelevant here. What matters is that when it — the only question that matters under Feretta is when it was presented to the trial judge. And it was not presented to the trial judge, as the Court of Appeal and the district court ultimately agreed, was not presented to the trial judge until the day of trial. That was the first and only time that the trial judge, whatever trial judge it would have happened to be, would have had a chance to evaluate that claim. I think it's important to highlight here as well that Feretta is not self-executing. It's not automatic. There's a reason why we have this requirement. There's a reason why Feretta, the Supreme Court case, made that clear. Because — Counsel, I want to get really quickly some clarification here. So he hands it to the with the clerk's office. Is that different? Or is it — or are you saying, no, he literally has to, in open court, say, Your Honor, I am requesting Feretta. I don't want, you know, counsel representing me. That could be a different circumstance had he filed it as a written motion, a notice motion, that had put the court and the attorneys on alert, as it were, that this was filed. Certainly, that could be a different scenario. That's not what happened here. I think what's important to note here is that this is — admittedly, it's kind of an unusual circumstance, factually. I don't think this sort of thing happens all the time. But the more important point for our purposes here is that this is not a circumstance that was contemplated by Feretta, which, again, made clear the request must be made to the trial judge. And given that this is outside of the bounds of Feretta, what Petitioner is asking this Court to do, essentially, is to extend the clear language of Feretta to a circumstance that Feretta never contemplated. And because Feretta never contemplated that circumstance — Isn't it the state's fault that the judges switched, and so the bailiff didn't hand it to that judge because there's now going to be a different judge? Your Honor, I don't think that's the issue, in terms of which judge was presiding. Really, it bothers me, because I know how the state courts operate, and I do know — the state trial courts. And I do know — I mean, this wasn't in the record. I just inferred, and I was right, that it was a different judge. So, you know, it seems like the state has — I mean — oh, we didn't receive the Feretta — the Superior Court. We didn't receive the Feretta request on time because that was a different judge, and now we've changed the judge. And so, I mean, it seems to me we should be evaluating whether January 29 was untimely or not. It's not, like, when, because by operation of the state's Superior Court flawed system, the judge actually shows up to try the case. Well, Your Honor, again, I think the important point to highlight here is that — you know, Your Honor's bringing up issues of, I think, fairness and what's right and just for this petition, and I understand —  Well, I understand. I understand that. But again, the important point is, under Feretta, he — it doesn't matter which judge it was. It doesn't really matter, ultimately. And there was a new judge on February 19th and was on January 29th. The issue is that what he did here was not making a filing. It was not making an oral assertion. Had he simply said at the conclusion of that hearing, as the petitioner did in the Tamplin case that was decided by this circuit, I would like to represent myself. Had he said that, even though the judge was a different judge than ultimately tried the case, I don't think there would be any dispute here that that would have been a request made to the trial judge. What he did here was not making an oral request, which would have been the best and was certainly something he was aware that he could do, nor was it a written motion, which also would have been most likely acceptable in this case. What he did was do something that is totally outside of the bounds of how the court system works. And it's certainly entirely reasonable for us to assume, I think, that petitioner understood that when he placed that file or when he handed it to the bailiff, which is apparently what happened here, he probably understood or reasonably understood that that request would be considered on the next court date, because the way that superior courts work is that once everyone is gone from the room, nobody is going to be looking at that file, absent a written motion that would alert the attorneys in the court. So nobody was going to be considering that until the next day. And I think the other important point I want to make here is that, and I said this earlier, but there was no dispute about this below. The superior court understood that this was an untimely request. Petitioner never said on February 19th, you know, Your Honor, you're treating this as untimely, but I made this two or three weeks ago. He never said that. This was, in fact, an argument that when he made his arguments in the appellate courts, California Court of Appeal and Supreme Court, he presupposed the untimely nature of this request, because he argued instead that there was an abuse of discretion under the State law of window factors, which he talks about again here. Those only come into play. They only matter at all. They're only relevant at all in the case of an untimely request. It is only now in Federal court, in the district court and now here, that petitioner has changed the argument somewhat to say not that there was an abuse of discretion, likely because that's a non-cognizable claim and can't be considered here, but instead he frames it as a timeliness argument that he never made before, because everybody, and I mean everybody, the petitioner himself, his attorney, the courts, the prosecutor, everybody understood what this was, which was an untimely request. Why? Because it was not considered by the trial judge until February 19th. That was the first and only time a trial judge, no matter which trial judge it was, had a chance to consider the request. Because, again, these requests are not automatic. They don't have to be granted, even if timely. There is a they have to determine if they're knowing involuntary and things like this. And that's the first and only time the Court had an opportunity to do that. And the other point I want to make is that even if this had been an untimely request, he still could have had it granted under the State law of window factors. So it's not like this Court would be saying, well, it's untimely and he's out of luck and that's unfair to him. It still could have been granted, despite the fact that it was untimely under State court law, which I know doesn't concern the Court here. But that, I think, is the important issue. Petitioner had the opportunity to make this request to the trial judge. He didn't do that. What he did here was unusual, but it's not something that is contemplated by Ferretta. And because it is outside of the realm of the four corners of Ferretta, the Court of Appeals' conclusion that this was untimely could not be, possibly be, an unreasonable application of Ferretta. If there are no other questions, I'm prepared to submit. Thank you. Thank you. Thank you. I have a few points I do want to respond to. First, you know, opposing counsel never addresses the fact that there is U.S. Supreme Court authority on what constitutes a filing and on the prison mailbox rule, both of which support a finding that the request was made on January 29th. They try to make some distinction between a court clerk and the court itself. I'm not aware of any case law that supports that distinction. You know, even a lawyer can't just stroll into a judge's chambers and make a request or submit a filing. The court clerk is the intermediary. And, you know, certainly for an inmate, that is, you know, there's a much greater distance between the ability to actually make a request directly to a judge. The clerk is the only way to really do that. But how do we bridge that gap to conclude that the judge received the request? And I asked the question to your friend on the other side about inferring, but, I mean, that still requires an inference where FRERTA requires the judge to know of the request. So how can we bridge that gap here? You know, one, I think we can infer that the FRERTA request is significant enough that with competent communication between the clerk and the judge that that request would be relayed. Two, we can infer that with this case going to trial that the judge would have been reviewing that and seeing what was, had been filed and what was happening with the case. But, again, this distinction between the court clerk and the court is just not supported by the case law. A filing is a filing with the court. And just like, you know, this other case law about prosecutors and law enforcement and knowledge is sort of imputed from one to the other. And similarly here I would say knowledge has to be imputed to the judge once that filing is made with the court. The defendant has no other option. And, you know, we can even hypothesize an instance where maybe a defendant mails a FRERTA request months before a hearing. And then goes, but then the judge just sits on it and, you know, there's no hearing on it until right before trial. You know, to allow that to be declared untimely seems to really undermine the FRERTA right itself. You know, and I also want to note that the filing was made, opposing counsel said otherwise, but I've cited in my briefing in the reply brief that, you know, the filing was also made in compliance with the California law. And that it was a proper filing under California law. Opposing counsel makes references to the superior court finding it untimely, the request untimely. The superior court never makes that finding. That's a finding that is made by the court of appeal. Essentially what happened is the, you know, Mr. Ayala argued that the trial court erred in denying his FRERTA request. And then the court of appeal made all of these, its own conclusions about what the trial court could have found or with the timeliness, made its own determination of untimeliness and used that. But Mr. Ayala actually relied on, and this is on 1 ER 33, he relied on People v. White. And the court of appeal said, well, actually People v. White doesn't apply here because, you know, we find that this was untimely and People v. White dealt with a timely request. So the fact that Mr. Ayala relied on People v. White shows that there was no presumption of untimeliness. He was arguing that it was a timely request that the court denied by essentially demanding, you know, readiness immediately. And then ultimately denying. So the, you know, the record's cleared. This was handed to the bailiff. This was placed in the court file, the court file of the trial judge on that date. It was received into the court, you know, that complies with the U.S. Supreme Court authority. It complies with California court authority that this was a proper filing, a proper request. And again, we're dealing with an incarcerated defendant who's trying to represent himself. And this was his only means of making that request at that particular time that he decided to represent himself to the judge. Unless there are any further questions, I will submit. Okay, thank you, counsel. Thank you. Ayala Bruce-Cesarios is submitted. This session is adjourned for today. Thank you. All rise. This court for this session stands adjourned.
judges: WARDLAW, DESAI, ALBA